[JUDGE TUCKER.
If the answer was considered evasive or defective, why did you not except?]
Botts. It would certainly have been most regular to except; but still the plaintiff may draw his inferences from the defects of the answer. In matters of account, too, it is not usual to insist on a very minute answer, where the cause may be regularly referred to a commissioner.
The apology of the executor, that the books of his testator had been burnt, ought not to protect him. He had once seen the account entered on those books; and when called on by the commissioners, he ought to have stated his best recollection ^concerning it; instead of which, he roundly tells them that he cannot render any account.
The doctrine contended for on the other side, that the Chancellor had no right to order the production of the books, is in opposition to the settled practice in the Courts of England and of this country from the earliest period. These books were not merely private property. Both the creditors and legatees of Fielding Lewis had an interest in them. The executor is bound to pay the debts first, and then the legacies, consequently he is bound to disclose whatever he knows of the testator’s affairs. Can it be presumed that the executor is allowed to keep such possession of the testator’s books, as will enable him to commit a fraud on the creditors and legatees. In Hook v. Ross, (a) the principle is affirmed, that the defendant may be compelled to produce books which are not merely the private books of the party. John Lewis would not produce these books, or give any information of their contents, on the presumption that they would operate against him. The maxim, then, emphatically applies, in odium spoliatoris omnia prassumunter;(b) and the executor may be presumed against to its full extent. There are many cases on this point; none, perhaps, exactly alike; *601 but some carry the doctrine much further, (a)
The letter exhibited in proof of the account, indicated circumstances sufficient to establish the demand; but, if it should not be thought enough to carry the whole claim, there can be no question but that the value of the 3,000 bushels of wheat should be allowed. It is conclusive that he thought himself indebted to that amount.
As to the statute of limitations which has been relied on, it was not pleaded in time, and was filed without leave of the Court. The Chancellor, on application, ought not to have permitted the plea to be filed, against the justice of the case; nor will a Court of Equity, under such circumstances, apply the statute by analogy, (b) But even if the plea had been regularly filed, it could not avail; because the promise of the executor, which was made within five years before the suit was commenced, to look at the books of his *testator and ascertain the balance, would take the case out of the statute, (c) This was, moreover, a foreign debt, as appears by the record; and it behoved the defendant to shew that Bacon was in Virginia, so as for the statute to run against him. But a complete objection to the operation of the statute is, that the testator, by his will, directs his debts to be paid; which has always been held to revive the debt in equity.
Monday, October 24, 1808. The Judges delivered their opinions.
JUDGE TUCKER.
The object of this suit is to obtain payment of an account alleged to be due from Fielding Bewis, deceased, to Anthony Bacon, of London, deceased. The bill charges that on the 31st of December, 1773, the balance of 2,3381. 6s. Sd. was due from the former to the latter, as by an account annexed, which is prayed to be taken as a part of the bill. That Lewis died in 1782, seised and possessed of a large estate in land, slaves, &c. That he devised sundry tracts of land to be sold by his executors for payment of his debts, and charged the real estate devised to his son John, who is also an executor, with the payment of 1,5001. sterling towards payment of his debts. Alleges that the executors have failed to sell those lands, and have also neglected to make any inventory of the personal estate, or to render any account of their actings and doings as executors. Interrogates them whether that sum was not due, or what other sum was, or remains due; and how the debt arose, and what each of them has acknowledged concerning the same, and the time of so doing. Prays a discovery of the assets, an account of the sales of the lands sold, and that if any remain unsold, that they may be sold; and for a general account, and for general relief. John Lewis, who admits himself to be the only acting executor, answers, that the executors “did” not know that any sum of money was due to Bacon from their testator; an equivocal expression which certainly furnished good grounds for excepting to the answer, which, however, was not excepted to. *Admits that his testator died, after making his will, possessed of a considerable real and personal estate, and particularizes sundry tracts, two of which they have sold for 1,3501. and the remainder are still on hand, as their supposed value could not be procured for them. That the amount of that sale, and the 1,5001. charged upon John’s part of the estate, have been paid in discharge of debts due from their testator to sundry persons in Virginia. That he died possessed also of ninety-one negroes, and other personal property to the amount of-, which were distributed agreeably to the testator’s will. No regular account accompanies the answer, to which the plaintiffs replied generally. After which an amended answer was filed by leave of the Court, in which the executor, John Lewis, states, that since filing his former answer, he had discovered in an old pocket-book of his father, the following “memorandum made with a pencil in his hand-writing. “Paid Mr. Mercer for Anthony Bacon, 4831. 0s. 7d. April 1st, 1776,” to which he refers, as a part of his answer.
Both the justice and amount of the plaintiff’s demand, is, in the opinion of the Chancellor, clearly and sufficiently proved by the affidavit of one John Deane, a bookkeeper to Anthony Bacon, annexed to the account, and made before the Lord Mayor of London, April 13th, 1775. And a letter from Fielding Lewis to Anthony Bacon, dated January 24th, preceding.
The two principal items in this account are thus stated:
1769, December 31st. To balance of account current as per account rendered and agreed, 1,8971, 13s. 5d.
To ditto per slave account as per account rendered and agreed, 2,5651. 6s. 6d.
The letter from Lewis makes no mention of the amount of his debt, but certainly acknowledges one in terms which shew it to have been very considerable; yet without affording any data by which any conjecture can be formed of the sum.
This affidavit, on which the Chancellor has founded his decree, was made near seventeen years before the commenccment *of this suit, in another country, and without notice to the party sought to be charged thereby. Consequently, according to the decision in Blincoe v. Berkeley, (1 Call, 405,) it was wholly inadmissible; there being no proof that F. Lewis ever acknowledged the justice of the account thereto annexed, or promised payment of that account, or that the same was ever seen either by himself, or either of his executors, previous to the commencement of this suit. Fielding Lewis’s letter furnishes no such evidence, because it was written before this affidavit was made. Nor does Charles Simms’s deposition mention that he shewed that account, or any other to the executor, John Lewis. The affidavit, and the account annexed, which must be taken as part of it, are wholly unsupported by any subsequent or collateral circumstance or testimony, and therefore, ought to have *602 been rejected as evidence, for the reasons before mentioned. But, further, there is intrinsic evidence in the account itself, to prove that this account was not the best evidence that could be had, inasmuch as those two items are charged as balances of other accounts rendered and agreed. These accounts, so alleged to have been agreed, ought to have been produced, and the agreement thereto proved as alleged. Had this been done, the evidence arising out of Fielding Lewis’s letter, would have had the effect, which the Chancellor erroneously imputes to it, of corroborating the plaintiff’s demand. Whereas, being written several months before the affidavit was made, and in a different quarter of the globe, and containing no mention of any specific sum acknowledged to be due, it cannot be supposed to refer to any matter therein contained. The cause was not ripe for a final hearing and decree, upon this evidence; Fielding Lewis’s letter certainly affords sufficient grounds to believe that a very considerable debt was, at the time he wrote it, due from him to Anthony Bacon ; but furnishes not the least evidence by which the Court could ascertain the amount. At law, if an executor plead plene adminis-travit in a suit founded upon an account, which is an admission of a debt; or, if he even suffer judgment by default, or nil dicit to pass against him in such a case, yet *must the plaintiff prove his account, or he shall recover only one penny damages, (a) I can discover no reason why Courts of Equity should be supposed so much more sharp-sighted than Courts of Law, as to be able, from general acknowledgments, to ascertain a determinate sum. Perhaps, indeed, it may be sufficient to establish a debt equal to the value of 3,000 bushels of wheat, but I am not altogether satisfied of that. In my opinion, the Chancellor, instead of proceeding to make a final decree upon this evidence, ought to have retained the cause for a year, to give the plaintiffs an opportunitj' of producing evidence, if they could, whereby the amount of the debt might be ascertained; and failing to do so, the bill should have been dismissed. That the account was not ascertained by a reference to Lewis’s books, is imputable, in part, to the plaintiff’s own neglect. The order for an account was made in September, 1795. The cause slept from that period till March, 1802, when other commissioners were appointed, who reported in September following, that they had called on John Lewis, the executor, for the purpose of settling his accounts of administration of the estate of his testator, when he informed them that it was impossible for him to make the settlement required, having on the 3d day of April, 1799, (near four years after the date of the first order,) lost all his books and papers, concerning that estate, as well as his own private books, by fire. No further steps appear to have been taken after this report.
But, even if this affidavit and account had been properly admitted as evidence in this cause, there are two manifest errors in the decree, which a bare inspection of the account will shew. The first is, that compound interest upon the balances stated as before mentioned, is not only charged in the account, but interest upon that compound interest, from the time of the institution of the suit, is given by the decree. The second is, that the decree is for 2,4881. 12s. the amount of the debit side of the account, instead of 2,4481. 7s. the amount of the balance apparent on the other side; which possibly may have been a mere clerical error in entering the decree; but is yet too important to pass unnoticed. *The decree not being final as to the 4831. 7s. alleged to have been paid to Mercer, for account of Bacon, no remarks are necessary, or would be proper upon that point.
We come now to consider a second, and that a very important point in this cause, as to the operation of the act of limitations.
Fielding Lewis, by his will, dated in October, 1781, appears to have bequeathed the whole of his slaves, stocks of horses, cattle and sheep, carriages, plate and household furniture, to his wife, his six sons, and his daughter’s husband; as also a very considerable estate in lands, to those sons, and. to his wife, the provision for whom is declared to be in lieu of her dowr3. No mention is made of any provision for payment of debts, (except a charge of 1,5001. sterling upon the estate devised to his son, John Lewis,) until near the close of his will, we find the following clauses: “Item: It is my will that my share in the Dismal Swamp Company, my lands bought of M. N. ” [and several other tracts particularly enumerated,] “be sold, at the discretion of my executors, which monej' so raised, to be disposed of as I shall hereafter direct. Item: All monies arising from the sale of lands, loan-office certificates, or otherwise, after my note to Mr. Charles Carter, and just debts are paid, I give to my six sons before mentioned, to be equally divided among them,” &c. Under the term otherwise, we may suppose he meant to include his outstanding debts, of which, in his letter to Anthony Bacon, he says there were not less than 5,0001. due at that time, and. any other personal effects not specifically bequeathed to his wife and children. It appears, I think, to have been clearly his intention to exonerate his slaves, and other specific legacies, from the payment of his debts; by the substitution of the 1,5001. charged upon the estate devised to his son, and the lands, &c. mentioned or comprehended within the meaning of these clauses. The executor, John Lewis, seems to have understood the will in this manner, and in his answer states that the same have been distributed agreeably thereto. After filing his answer, to which the ^plaintiff replied generally, and an amended answer, to which there is no reply, and after the deposition of a witness had been taken, and the cause set for hearing by the plaintiff’s counsel, that defendant filed a plea of the act of limitations, in bar of the plaintiff’s demand. And at a subsequent term the cause was heard, as to that defendant only, upon the bill, plea, answer, exhibits, and the exam *603 ination of a witness; when the Court reserving to the defendant the benefit of his plea, at the final hearing, directed the account already noticed: and upon the final hearing of the cause, overruled the plea; and proceeded to make a final decree in favour of the plaintiffs. I must here observe, that the plea neither appears to have been filed with leave of the Court, nor was it replied to by the plaintiffs, as it ought to have been, if they could shew, as possibly they might, that they came within any of the exceptions in the statute of limitations, (a) The Chancellor, upon what grounds I cannot perceive, pronounced it to be a debt arising from such accounts as concerned the trade of merchandise between merchants. But there is no charge to that effect in the bill, nor any thing else in the record that shews it. Nor, that I recollect, was this point insisted on, or even mentioned in the argument here. Besides, if it were such an account originally, it had been long since settled and agreed; which takes it out of the exception, (b)
The objections to the plea insisted on here, were, first, that it was a foreign debt, and the plaintiffs foreigners. This, if true, ought, nevertheless, to have been specially replied, for the reasons already mentioned. Secondly, that Fielding Lewis's letter was an assumpsit within the times limited by our statute. This is not correct. Thirdly, that the executor, John Lewis, acknowledged the debt to Charles Simms, as agent for the plaintiffs, which took it out of the statute; and fourthly, that the debt, if barred by the statute, was nevertheless revived by that clause in the testator’s will, which speaks of the payment of his just debts. The two last remain to be considered.
^Charles Simms' deposes ‘‘that in 1789, the claim was put into his hands for collection, soon after which, he called on the defendant, John Lewis, and informed him that he had the collection of the said debt, and in the course of conversation on that subject, the defendant acknowledged that there appeared from his father’s books to be a considerable debt due from his father’s estate to Anthony Bacon, and promised to call on the deponent in a day or two, in order to ascertain the balance, but failed to do so.” That a very slight acknowledgment by the party himself who contracts a debt, will take it out of the statute of limitations, is admitted. But this Court, in the case of an executor, seems to have thought there was some distinction. In the case of Henderson v. Foote’s executors, (c) the plaintiff gave in evidence, that John Fitzhugh, the defendant, frequently said that he understood there was a considerable debt, ot between two and three hundred pounds, due from Foote’s estate to the plaintiff; that he believed the debt to be just, and found the account in the house, and was willing to pay his part of it; that the legatees and sons of Foote were determined to take every advantage, &c. The President, in delivering the opinion of this Court, said, “We are of opinion that, in this case, the loose conversation of Fitzhugh, even if he had been executor, instead of being only the husband of the executrix, would not have operated, either as a new promise, or as an acknowledgment so as to revive the debt.” That case appears to me infinitely stronger than the present, as to this particular point. And there seems to be a good reason why such a slight acknowledgment as might revive a debt against a debtor himself, should not receive the same liberal construction against an executor or administrator, who may be well persuaded of the justice of the debt, barred by the act, and yet not hfive assets to pay it; or, not without making themselves chargeable with a de-vastavit. And it is not improbable thát the first clause of the statute of frauds and perjuries, was intended to protect executors from being made ^chargeable as for a devastavit, upon such slight grounds of a promise to pay the debt of their testator.
But, the last ground of exception to the plea, to wit, that if the debt were barred by the statute, it was nevertheless revived by those clauses of the testator’s will, which relate to the payment of his debts, still remains to be considered.
It seems to be doctrine pretty well established in equity, that if a testator direct in his will that all his just debts shall be paid, and charge his lands with the payment, debts barred by the statute of limitations are thereby revived, (d) But in all these cases lands were clearly charged with the debts, which made the executors trustees as far as that fund went. In 3 Peere Williams, 89, the reporter makes a quaere, ‘whether if a man were to devise his personal estate in trust to pay his debts, would this, as creating a trust, revive a debt barred by the statute; or would not such devise be merely void, as saying no more than the law of course says, viz. that a man’s personal estate shall pay his debts.” My own opinion is, that it would not. For suppose he were to direct that simple contract debts, particularly noticed, should be paid before any bond, or debt of greater degree: could a Court of Equity change the course which the law has established, and order such debts to be first paid? The personal estate is the legal fund for payment of debts, and which, as against creditors, unless they please, the testator cannot exempt, although as against a devisee of his land he may, by appropriating his lands, if sufficient, for payment of his debts. Where a *604 testator gives his personal estate to his executors, he does no more than the law does, and it is like giving lands to the heir, which is void, (a) Such a devise, therefore, would not create a trust, which is, emphatically speaking, a mere creature of a Court, which claims to direct a man’s actions according to conscience; because, the law has clearly and fully prescribed r.he course which' an executor is bound tó *pursue: his conscience, therefore, is bound by the law, and not by the will of the testator in any matter which may be incompatible with the law. But a trustee is bound to pursue the directions of him by whom the trust is created. An executor, therefore, is only to be regarded as a trustee in regard to such funds, committed to his management, as do not come under the character and description of legal assets, or personal estate. Over these a Court of Equity may exert its controul. It is, however, very true that the doctrine upon this head, as laid down in Andrews v. Brown et ux. (b) is that if a debtor make his will and direct that all his debts shall be paid, or made any provision for the payment of his debts in general; that would revive such debt, and bring it out of the statute, so that his executors would be liable to the payment of that debt, among the rest. But this seems only to be the reporter’s own opinion; for that point was not in any manner before the Court.
The testator in the present case having disposed of, probably, the whole of his visible personal estate, among his wife and children ; and the executor having, as he has confessed in his answer, distributed the same according to the directions of his will; the testator having, moreover, substituted a considerable real fund in lieu of the personal, for payment of his just debts; a creditor having a demand against his estate, had it in his choice to pursue either of three modes, to obtain payment of his demand. First, against the executors, at law, who could not discharge themselves from their liability, by shewing that they had distributed the slaves, and personal estate, according to the directions of the testator’s will; but on the other hand, they were at full liberty, I conceive, to avail themselves of the lapse of time, by pleading the statute of limitations.
Secondly. They might in equity pursue the personal estate in the hands of the legatees ;(c) in which case, they also might have availed themselves of the statute; or,
Thirdly. They might have brought a suit in equity, as the plaintiffs have done, against the executors, as trustees, in respect to the lands directed to be sold for payment of *debts; in which case, according to the established doctrines of Courts of Equity, that trusts are not within the statute of limitations, (d) it appears to me the defendant is precluded from the benefit of his plea, so far as relates to his charge of 1,5001. sterling, upon the lands devised to John Lewis, and as relates to the other lands directed to be sold for the payment of the testator’s debts; but that the personal estate, not being properly the subject of a trust for the purpose, the plea is good as to that.
The testator so far from creating, or intending to create a trust in respect to this part of his estate, having disposed of it to his family, and substituted another fund in its stead. For these reasons I am of opinion that the Chancellor’s decree ought to be reversed, and the cause to be sent back with directions to be there proceeded in according to the principles which I have already expressed.
JUDGE ROANE.
The appellees in this case, having set down the cause for hearing, without excepting to the answer, which is evasive, and does not come up to the requisitions of the bill, will perhaps suffer by their injudicious course of proceeding : for I have no doubt but that a much larger debt was due from the testator of the appellant than the appellees have established by their testimony. This is entirely manifest from the whole tenor of the letter of January 24th, 1775: but, inasmuch as that letter does not ascertain the ulterior sum due to the appellees’ testator, and as there is no other competent evidence to fix it, we must be content with decreeing the value of the three thousand bushels of wheat, spoken of in that letter, with legal interest; and as the parties have consented that the execution of the decree appealed from, should be suspended until the further order of the Court, as to the sum of 4831. 0s. 7d. with interest from the 1st of April, 1776, so as to let in the inquiry whether that sum (mentioned in the amended answer) was paid, or not, on account of the debt in question, I am of opinion that that inquiry should also be made, and, if found in the affirmative, that a deduction should be *made thereof from the sum decreed: both inquiries to be made by an issue to be directed by the Court of Chancery.
As to the point of the act of limitations, it is unnecessary to inquire into the effect of the confession or acknowledgment of J. Lewis, proved by Simms’s deposition. That point, as it relates to an acknowledgment by an executor, is important, and will require due consideration. It is unnecessary to be decided, because I am clearly of opinion that the testator himself has waived the benefit of the statute of limitations, by creating a fund by his will, (from the sale of lands,) for the payment of his “just debts.” The doctrine on this subject, after some controversy in the Courts of Equity, seems at length to be fully settled; and goes on this ground, that a debt barred by the statute of limitations is, nevertheless, a debt, though the act takes away the remedy for the recovery of it. (e)
It has been established, (and, if it has not, it ought to be,) that an advertisement, by a debtor, notifying all those who have any just debts owing to them that they may apply at such a place and get payment, is such an acknowledgment as will bring a debt out of the statute. That case is analogous to the present, in which the testa *605 tor manifests his desire that his just debts should be paid, and provides a fund for the purpose: a debt which is originally a just debt, does not cease to be so, in consequence of the lapse of five years since its creation.
It is supposed by the Judge who preceded me, that a debt revived, by creating a trust-fund from real property, for its payment should be confined to that fund. I have found no case to warrant this restriction, and can see no ground on which it can be justified; at least where the created fund is additional to, and not in exclusion of the personal estate, which is the proper and natural fund for the payment of debts, and is never construed to be exonerated, but by express words, or a plain and necessary implication.
Where the real fund is substituted for the personal, and in lieu thereof, it might be argued, that there is not an absolute *and unqualified waiver of the statute, but only a conditional one; and that, therefore, a party claiming the benefit of the waiver, can only claim it on the terms imposed by the testator; viz. by abiding by the exemption of the personal estate. In the case, however, of an additional fund, the waiver is without condition, and, the bar interposed by the statute being at an end, the creditor is restored to his original situation, and may seek payment as formerly, out of the personal estate.
The above distinction would seem to be reasonable; but I have met with no cases which have taken it, and I give no decided opinion, respecting it. I think it clear, however, that in the case of an additional fund, the creditor is not ousted of his recourse against the personal estate.
The question then recurs, is the fund from the.real estate in this case, additional to, or in exemption of the fund of the personal estate? I infer the former. There is no express declaration that the personal estate is to be exempted; nor is there a strong and necessary implication to that effect; in which case, of a necessary implication, it is held that the personal estate should be specifically bequeathed to others, (a) It is true it appears that negroes and other personal estate, are bequeathed by the testator; but it does not appear that all the personal estate is bequeathed, either by particular legacies, or a general and sweeping bequest of the residue. What, then, is this but the ordinary case; for in most wills, the personal estate, or a great part thereof, is particularly bequeathed away; and yet that circumstance alone, does not operate an exemption from the payment of debts: the legacy is taken subject to the payment thereof. In this case, on the other hand, so far from there being an express or necessary exemption of the personal estate, a part thereof, viz. ‘ ‘monies arising from the sale of loan office certificates, or otherwise,” is expressly recognised and relied on for the payment of the debts. This case, therefore, is too naked for us to infer an exemption of the personal fund, a fund which, between a debtor and his creditors, is not likely to be withdrawn from the payment *of the debts. I am, therefore, of opinion that the will in question amounts to an acknowledgment of the debt in controversy, and to a waiver of the statute of limitations: the consequence of which revival is, that the appellee’s testator can charge the personal estate by the general law on this subject, and also charge the trust-fund, created by the will, by virtue of the provisions thereof.
The decree, however, is only against the goods, or personal assets of the testator: it ought further to have provided a recourse against the real assets, in the event of the personal assets proving deficient. It is true, the decree is not appealed from by the appellees; but that probably arose, both from their confidence in the sufficiency of the personal fund, and from the consideration that their adversary had appealed. The Court, however, ought to give a decree commensurate with the rights of the parties, and a correction, as to this point, ought now to take place. As to the objection that the personal estate has been distributed, there is nothing in it. The appellant had reason to know, and did know, from the books of his testator, that this debt was due; and he ought not to have distributed the estate before that debt was satisfied: besides, we are not told when the estate was distributed: and, although it was distributed, yet, until the whole amount is applied, the executor is considered as having assets, for the due production of which, when necessary, he has taken bond from the distributees.
Upon the whole, I am of opinion, that the decree should be reversed, and one rendered in lieu thereof, somewhat to the following purport: “This Court is of opinion that the decree of the High Court of Chancery is erroneous, in this, that there is no adequate testimony in the case warranting the same to the extent for which it is rendered; and also in this, that it does not provide a recourse for the appellees, against the real assets set apart by the will of the testator, F. Lewis, for the payment of his debts, in the event of the personal assets proving insufficient for the payment of the debt in controversy: and this Court proceeding, &c. is of opinion, and doth accordingly ^decree, that an issue be made up and tried, under the direction oi the Court of Chancerj', to ascertain the value, at Fredericksburg, in this State, of 3,000 bushels of merchantable wheat when manufactured into flour, as of the date of the 24th of January, 177S, which sum, with legal interest from the said day until the 27th of May, 1803, ought to be decreed to the appellants; and that the same be also charged upon the real assets created by the will of the said Fielding Lewis, in the-event of the personal assets proving insufficient, in such manner, and under such conditions and restrictions, as the said Court of Chancery shall prescribe and direct: Provided nevertheless, that if the appellant shall make application therefor, within a reasonable time, to be limited by the said Court, an issue shall be also directed to ascertain whether any and what payments have been made on account of' the debt aforesaid, since the date aforesaid, and at what time or times respectively ; and, if any such be found to have been made,. *606 that the several and respective amounts thereof, with legal interest thereupon from the respective times when made, until the said 27th of May, 1803, be deducted from the sum hereby directed to be decreed: and provided also, that there shall be deducted, in both instances, (that is, both with respect to the sum hereby directed to be decreed, and in respect of the payments which may be found to have been made, on account thereof, as aforesaid,) such and so much of the interest thereupon, as may have accrued between the 19th of April, 1775, and the 19th of April, 1783; that, in the event of such issue being required, within the time to be prescribed, as aforesaid, the decree before directed to be rendered be suspended, until the.result thereof; and at the nest ensuing term of the Court of Chancery, or as soon as may be thereafter, be permitted to take effect for the whole, or a part of the sum hereby directed to be decreed, as the case may be: and, in the event of the whole of the said sum, with interest as aforesaid, being found *to have been paid, that then, and in that case, the bill of the appellees to stand dismissed with costs.”
. JUDGE FDEMING.
After a careful examination of the record in this cause, there appeared to me only one difficulty of importance, and that is, whether, and how far, the act of limitations, pleaded by the defendant, is properly a bar to the plaintiffs’ demand, taking into consideration the trust created by the will of the testator, Fielding Lewis, for payment of his debts.
In examining the cases (as far as I have had access to books) where a trust created by will, for payment of debts, lets in such as are otherwise barred by the statute of limitations, there seems to have been some contrariety of opinions on the subject; but the result, upon the whole, appears to be, (and so it was said by Lord Hardwicke, in the case of Lacón v. Briggs, 3 Atkins, 107,) that ‘‘there must be a direct admission of the debt, to take it out of the statute of limitations, though there have been several cases at law, where this has not been held sufficient, unless it is likewise attended with an express promise to pay;” but that (said his Lordship) may be rather too hard: and it has been truly said, that where real estate has been affected by such stale debts, it is in a plain and clear case, and not to be charged with a debt that must depend upon an account to be taken. “I am of opinion,” said Lord Hardwicke, “that if I should decree an account to be taken in this case,” the account being of 17 years standing, “I should make one of the worst precedents that a .Court of Equity can make, for disturbing the peace of families.”
There is, however, in the case before us, an acknowledgment under the hand of the testator, Fielding Lewis, in a letter to Anthony Bacon, (already noticed,) that he was manufacturing 3,000 bushels of wheat, •fehe proceeds of which he promised to remit 'towards discharging his debts; and so far, the account between them seems to have been established; and to that amount, the trust, created by the will, lets *in the debt otherwise barred by the act of limitations: but, in my conception, the plaintiffs must resort to the fund created by that trust for payment, as it is upon that ground, and upon that only, that they can be let in for any part of the debt. And I would still leave a door open to the plaintiffs to establish a further demand against the estate, by any legal or equitable means they may think fit to pursue, so far as there may yet remain unappropriated, any fund arising out of the said trust estate, but no further.
JUDGE FLEMING
presented the following decree as the result of the opinions of the Judges.
This Court is of opinion that the decree is erroneous in this, that the Chancellor admitted an account stated, and an affidavit annexed thereto, to be evidence in this cause to charge the deceased Fielding Lewis’s estate, with the amount of that account, although that affidavit was made in a foreign country, without the knowledge of the party, sought to be charged thereby nearly seventeen years before the commencement of the appel-lees’ suit; and, although there is no' proof that the said Fielding Lewis ever acknowledged the justice of that account, or promised payment thereof, or that the same was ever seen either by himself, or by his executors, or either of them, previous to the institution of the present suit, and although the two principal items therein, amounting respectively to the sum of 1,8971. 13s. 5d. and 2,5651. 6s. 6d. are severally stated as balances of other accounts,rendered and agreed; which accounts, so alleged to have been agreed, ought to have been produced, if still in existence, and proved as alleged; as also in this, that compound interest is charged in the account so stated and exhibited, and interest is also allowed by the decree upon that compound interest, from the time of the institution of the appellees’ suit; as also in this, that the decree pronounced is for the aggregate amount of the account so stated, to wit, 2,4881. 12s. instead of 2,4481. 7s. the balance stated to be due, even if that account had been proper evidence in this *cause; therefore the said decree is reversed with costs: and this Court proceeding to make such order and decree as the said Superior Court of Chancery ought to have made, is of opinion, that the letter of the said Fielding Lewis to Anthony Bacon, dated the 24th day of Jan-uar3, 1775, acknowledging a debt due from him to the said Anthony Bacon in such terms, as shew it to have been very considerable, but without specifying the amount thereof, of which there is no evidence, affords sufficient reasons for retaining the cause in the said Superior Court of Chancery, for a year, or such further time as the said Superior Court of Chancery may think reasonable; to be further proceeded in, in such manner as the parties may be advised, for their benefit; and, on such further proceedings to be had in the cause, a majority of the Courtis of’Opinion, that the estate of the said Fielding Lewis is to be charged with the value of three thousand bushels of wheat, which, in the said recited letter, he said he was manufacturing into flour, and *607 promised to apply the proceeds thereof towards discharging' the said debt, the value, or proceeds of which, to be ascertained in such manner as the said Superior Court of Chancery shall direct; and further, to inquire whether the same, or any, and what part thereof, hath been by the said Fielding Lewis so applied. And a majority of this Court is further of opinion, that the benefit of the appellant’s plea of the act of limitations was, and is, proper to be reserved to him until the final hearing of this cause; and if, upon that occasion, it shall appear that there remains any surplus of the funds appropriated by the testator, Fielding Lewis, specially, to the payment of his just debts, the said plea ought not to operate or be admitted by the said Court of Chancery to bar the appellees from a decree, for so much thereof as shall appear to remain in the hands of the appellant, after payment of other just debts of his testator: but as the appellees have not shewn themselves to be within any of the exceptions contained in the act of limitations, the appellant will be entitled to the benefit of the said act, in bar of a recovery against him, beyond the balance which may so appear, upon an account to be taken as to those funds, in such manner as *the said Superior Court of Chancery shall direct. It is therefore decreed and ordered, that the cause be remanded to the said Superior Court of Chancery, for further proceedings to be had therein, agreeable to the foregoing opinion.
Monday, October 24, 1808. The following decree, in substance, was entered.
The whole Court was of opinion, that the decree of the Chancellor was erroneous, in this, that he admitted an account stated, and an affidavit annexed thereto, to be evidence in the cause, to charge the estate of Fielding Lewis, deceased, with the amount ot that account, although that affidavit was made in a foreign country, without the knowledge of the party sought to be charged therebj', nearly seventeen years before the commencement of the appellees’ suit; and although there is no proof that the said Fielding Lewis ever acknowledged the justice of that account, or promised payment thereof, or that the same was ever seen either by himself, or by his executors, or either of them, previous to the institution of the present suit; and although the two principal items therein, amounting respectively to the sum of 1,8971. 13s. 5d. and 2,5651. 6s. 6d. are severally stated as balances of other accounts rendered and agreed, which accounts so alleged to have been agreed, ought to have been produced, if still in existence, and proved as alleged. As also in this, that compound interest is charged in the account so stated and exhibited ; and interest is allowed by the decree upon that compound interest, from the time of the institution of the appellees’ suit: as also in this, that the decree pronounced is for the aggregate amount of the account so stated, viz. 2,4881. 12s. instead of 2,4481. 7s. the balance stated to be due, even if that account had been proper evidence in the cause.
Decree reversed, with costs, &c. And the Court proceeding to pronounce such decree as the Superior Court of Chancery ought to have pronounced, the whole Court was *of opinion, that the letter of Fielding Lewis to Anthony Bacon, dated the 24th of January, 1775, acknowledging a debt due from him to the said Bacon, in such terms as shew it to have been very considerable, but without specifying the amount thereof, of which there is no evidence, affords sufficient reason for retaining the cause in the Superior Court of Chancery for a year, or such further time as the said Court of Chancery may think reasonable, to be further proceeded in, in such manner as the parties may be advised for their benefit: and in such further proceedings to be had in the cause, a majority of the Court is of opinion, that the estate of the said Fielding Lewis is to be charged with the value of 3,000 bushels of wheat, which, in the said recited letter, he said he was manufacturing into flour, and promised to apply the proceeds thereof towards discharging the said debt; the value or proceeds of which to be ascertained in such manner as the said Court of Chancery shall direct; and further, that the said Court of Chancery direct an inquiry to be made, whether the same, or any, and what part thereof hath, by the said Lewis, been so applied. And a majority of the Court is further of opinion, that the benefit of the appellant’s plea of the act of limitations was, and is proper to be reserved to him, till the final hearing; and if, upon that occasion, it shall appear that there remains any surplus of the funds appropriated by the testator, Fielding Lewis, specially to the payment of his just debts, the said plea ought not to operate, or be admitted by the said Court of Chancery, to bar the appellees from a decree for so much thereof, as shall remain in the hands of the appellant, after payment of other just debts of his testator: but as the appellees have not shewn themselves to be within any of the exceptions contained in the act of limitations, the appellant will be entitled to the benefit of the said act, in bar of a recovery against him, beyond the balance which may so appear upon an account to be taken as to those funds, in such manner as the said Superior Court of Chancery shall ^direct. The cause was remanded to the Superior Court of Chancery, for further proceedings, agreeable to the foregoing opinion and decree.

 1 Hen. &Munf. 310.

 Princip. Leg'. & AEauit. 42.

 See 1 P. Wms. 730, 732. Dalston v. Coatworth; 1 Vern. 307, Childrens v. Saxby: Ibid. 308, East India Company v. Eyans et al.; 1 Ch. Ca. 292, Gartside and others v. Ratlcliff and others; Hob. 109. The King and Lord Hunsdon v. The Countess Dowager of Arundel et al.

 3 Call, 538. Lomax v. Pendleton.

 2 Saund. 04, a, William's note to Bodsden v. Harridge.

 1 Esp. N. P. 142. and Bull. N. P. 140, cite 1 Salk. 296, Slielly’s case, Quarles v. Littlepage, in this Court, May term, 1808, vol. 2, p. 401.

 3 Call, 1, Bogle and Scott v. Conway’s Executors.

 3 Bac. Abr. 513, old ed. or 4 Bac. Abr. Gwil. ed. 477, tit. “Limitation of Actions,” letter E. 1 Vent. 89, DO, 2 Saund. 124, Webber y. Tlvil, cited 1 Ed. Ca. 304, Watson on Partn. 207, 208, 209, Dublin, ed. 2 Ves. 400, Welford y. Liddel. See also 3 Saund. 127, note (6) by Williams. — Note in Original Edition.

 3 Call, 251.

a) 1 Salk. 154, Anonymous; (1) 2 Vern. 141, Gofton v. Mill; 1 Ecu Ca. 304; 2 Ecu Ca. 579 ; 2 P. Wms. 373, Blakeway v. Earl of Strafford; 3 Bro. Pari. Ca. 305, S. C. 3 P. Wms. 84, 89, Jones v. Lord Strafford; Ibid. 91, Harris v. Ingledew; Ibid. 358, 359, King y. King and Ennis. See also Amt. 231, Oughterlony y. Earl Powis, where Lord Hardwicke avoided the question; but seems clearly to be of opinion against a particular debt being revived by such a trust as to lands: and 3 Atk. 107, Lacón v. Briggs. — Note in Original Edition.

 See a valuable note to this case in Evans’s edition of Salkeld. — Note in Original Edition.

 3 P. wins. 324, 325, per Ld. Ce. Talbot, in Hazle-wood v. Pope.

 Prec. in Cba. 385.

 1 wash. 312, Burnley v. Lambert.

 1 Eq. Ca. 303, 304 ; 2 P. Wms. 145. Norton v. Tur-vill, Ibid. 373, Blakeway v. Earl of Stafford.

5 Burr. 2630, Cowp. 548, per Ld. Mansfield in Trueman v. Fenton.

 Ambler’s Rep. 37, Inchiquin v. Obrien.